**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

April Brown,

        Plaintiff,

v.

Arizona Board of Regents,

        Defendant.

No. CV-24-08078-PCT-KML

**ORDER**

Plaintiff April Brown worked for Northern Arizona University ("NAU") as a non-tenure track faculty member from 2016 until 2020, when her yearly contract was not renewed. She filed this suit against the Arizona Board of Regents ("ABOR") because she believes the non-renewal was due to sex discrimination. (Doc. 1.) ABOR seeks summary judgment arguing Brown has insufficient evidence supporting her claim. (Doc. 34.) Its motion is granted.

## I.       Factual Background

In August 2016, Brown left a 20-year career in print, radio, and television journalism to begin working for NAU as a non-tenure track Assistant Professor in the School of Communication ("SOC"). (Doc. 40 at 2.) This position opened as a backfill for a tenured professor who had been reassigned. (Doc. 40 at 2.) The SOC (which is part of the College of Behavioral Sciences) contains six programs including journalism and communication studies, and houses the Media Innovation Center ("MIC"), where students learn experientially by operating media channels. (Doc. 34 at 3.) Brown had originally

applied both for the assistant professorship and a higher-paid position as MIC director; although she was one of three finalists for MIC Director, NAU ultimately hired Brian Rackham for that position and Brown for the assistant professorship. (Doc. 34 at 3-4.) Brown questioned the rationale for this decision and was told by then-SOC Director Norm Medoff it was because Rackham was more technically inclined. (Doc. 40-2 at 4.) Brown communicated to Medoff her belief this choice was based on "sexist assumptions" because her own technical skillset was not considered or discussed.[1] (Docs. 34 at 4; 40-2 at 4.) Medoff was later replaced by Brant Short and at the relevant times for this suit, Karen Pugliesi was dean of the College of Behavioral Sciences. (Doc. 34 at 3.)

Brown's original three-year contract transitioned to a yearly contract in 2019. (Doc. 40-3 at 186.) During her employment, she consistently received positive reviews. (Doc. 40-2 at 116.) She was recognized multiple times for her teaching, including winning an award, and taught some over-enrolled classes. (Doc. 40-2 at 9, 68.) Her courses were primarily in the communication studies and journalism programs. (Doc. 34-2 at 92-93.) Though she expected she would be assigned to teach broadcast, television, and radio journalism courses and was interested in doing so, she was not assigned courses in those areas. (Doc. 40-2 at 10.) In 2018, Brown was asked but declined to serve as the program coordinator for the journalism program, citing the stress and workload. (Doc. 34-3 at 72-73.) On February 19, 2020, Brown was promoted following a multi-tiered process which included Pugliesi's and Short's official recommendations and support; her promotion was set to take effect the following academic year. (Doc. 40-2 at 12.)

In April 2020, citing the COVID pandemic's budgetary impact, the SOC announced possible staffing reductions. (Doc. 34-3 at 3.) The subsequent process to identify which faculty to eliminate was primarily led by Pugliesi: Short first identified journalism and photography as programs that could sustain faculty reductions due to enrollment numbers, Pugliesi then chose individual faculty members, and Short ultimately "agreed with and

---

[1] Brown includes the decision to hire Rackham for the higher-paid position as context for her claims and does not contend it constitutes a Title VII violation. (Doc. 40.) A claim based on that event would be time-barred because Brown did not file an EEOC charge within the 300-day window (see Doc. 34 at 12-13), and Brown does not argue otherwise.

supported" Pugliesi's proposed selections. (Doc. 34-2 at 42.) The school alleges it used three criteria to determine which non-tenure-track faculty would not be renewed: performance, instructional needs, and strategic impact. (Doc. 34-3 at 16.) The parties agree performance was essentially a non-issue because nearly all faculty members under consideration had positive reviews. (Doc. 34-2 at 15.)

On May 26, 2020, Brown was informed she would not be receiving a new contract for the 2020-2021 school year.[2] (Doc. 40-2 at 13.) Brown was one of three women and one man whose contracts were not renewed. (Doc. 40-2 at 126.) ABOR provides evidence showing Pugliesi selected Brown rather than two male non-tenure track journalism faculty members because her loss would harm the department less due to her classes and experience. (Docs. 34-2 at 32, 41-42; 34-3 at 16, 55.) Brown alleges the non-renewal factors, if accurately applied, would weigh in favor of renewing her contract. (Doc. 40 at 5-8.)

Brown filed a Charge of Discrimination with the EEOC on or around March 11, 2021, and later received a right to sue notice. Brown's original complaint alleged gender discrimination and retaliation in violation of Title VII, but the parties stipulated to the dismissal of the retaliation claim. ABOR now moves for summary judgment on the sole remaining claim for gender discrimination.

## II.    Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the burden of presenting the basis for the motion and identifying evidence it believes demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit

---

[2] Brown had been applying for other positions and had already accepted a tenure-track position at California State University, which she told Pugliesi and Short during the May 26 meeting. (Doc. 34 at 6.) Given that Brown had accepted that offer, her non-renewal seemingly had no material impact on her career plans.

under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But a non-movant cannot rest on mere allegations or denials and must instead show there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 249 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action" because of the plaintiff's protected characteristic. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

III.    Analysis

A. Prima Facie Case

A plaintiff bringing a disparate treatment claim must establish a prima facie case of discrimination either through "direct or circumstantial evidence of discriminatory intent" or using the *McDonnell Douglas* framework. *Freyd v. Univ. of Ore.*, 990 F.3d 1211, 1228-29 (9th Cir. 2021) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); *see Gleason v. Filter Holdings, LLC*, 737 F. Supp. 3d 1033, 1066 (D. Or. 2024). The *McDonnell Douglas* framework asks a plaintiff to first show "(1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." *Lui v. DeJoy*, 129 F.4th 770, 777 (9th Cir. 2025) (simplified). The evidence required for a prima facie case is "minimal." *White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1067 (D. Ariz. 2009). If a plaintiff makes these showings, the defendant must "show a legitimate, nondiscriminatory reason for the challenged actions." *Freyd*, 990 F.3d at 1228. And if a defendant makes that showing, the plaintiff must "show that the proffered nondiscriminatory reason is pretextual." *Id.*

ABOR does not contest the first three prongs of a prima facie case under the

*McDonnell Douglas* framework: Brown belongs to a protected class, was qualified for and satisfactorily performed her job,[3] and was subjected to the adverse employment action of contractual nonrenewal (*see* Docs. 40 at 10; Doc. 43). *Reynaga*, 847 F.3d at 691. The parties dispute only whether similarly-situated individuals who were not women were treated more favorably, a question generally best suited for a factfinder's resolution. *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003). For instance, supervisory employees are typically not similarly situated to non-supervisory employees with less responsibility. *White*, 664 F. Supp. 2d at 1068 (also weighing difference in employees' behavior). Nonetheless, the jobs need not be identical, only "substantially equal." *Freyd*, 990 F.3d at 1220.

Brown identifies David Harpster and Rory Faust—both male faculty members whose contracts were renewed—as comparators.[4] (Doc. 40 at 8, 10.) Harpster, Faust, and Brown were all non-tenure-track faculty members in the journalism program; taught journalism and communication courses; had the same allocation of teaching versus service responsibilities (80% to 20%); and reported to Short. (Doc. 40-2 at 13-16.) Each had some under-enrolled classes and none of the three served as coordinator for the journalism department during the relevant time period. (Doc. 40-2 at 13-16.) All said, Brown has likely identified comparators with substantially-equal jobs who were treated more favorably than she was. *Vasquez*, 349 F.3d at 641 (holding despite significant differences in funding, research types, and organizational responsibilities, jury could conclude work was substantially equal). Accordingly, the court assumes Brown has made a prima facie case of discrimination under the *McDonnell Douglas* framework.

---

[3] Though ABOR notes Brown was initially inexperienced in teaching (Doc. 34 at 4-5), it does not argue she was unqualified for her job or performed unsatisfactorily, or that her performance was a reason for the nonrenewal.

[4] There is some dispute whether Brown properly identified Faust as a comparator at the procedurally-appropriate time. (Doc. 43 at 4.) Because Brown's claim fails on other grounds, there is no need to resolve whether Brown properly disclosed Faust. For purposes of this order, Faust is treated as a proper comparator.

**B. Pretext and Credence**

Once the plaintiff has made a prima facie case, the burden shifts to the defendant to provide a non-discriminatory reason for the adverse employment action. *Reynaga*, 847 F.3d at 691. If the defendant does so, "the plaintiff may defeat summary judgment by satisfying the usual standard of proof" required by Rule 56. *Cornwell*, 439 F.3d at 1028. In other words, the plaintiff must point to evidence in the record that would allow a reasonable jury to "conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's [sex]." *Id.* The plaintiff may do so by offering evidence—either direct, or "specific and substantial" if circumstantial—that a discriminatory reason is "more likely" or the employer's explanation is pretextual or "unworthy of credence." *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094-95 (9th Cir. 2005); *see Blair v. Shulkin*, 685 F. App'x 587, 588 (9th Cir. 2017). The plaintiff's protected characteristic "need not be the sole or primary cause of the employer's adverse action." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 665 (2020). And generally, plaintiffs alleging employment discrimination need produce "very little evidence" to overcome an employer's motion for summary judgment because the inquiry is best-suited for a factfinder. *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000); *see Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 1002 (9th Cir. 2019) (at summary judgment, courts must "zealously guard" employees' rights to trial because discrimination claims are "difficult to prove without a full airing of the evidence").

ABOR has offered a legitimate, non-discriminatory rationale: Brown was selected for non-renewal after "many meetings, extensive analysis, and agreement" that her selection would cause the "least harm" to the journalism program. (Doc. 34 at 10.) Brown must therefore show this explanation is pretextual or unworthy of credence. She is unable to do so.

Brown does not produce direct evidence such as sexist statements by decision-makers which would indicate the non-discriminatory rationale is pretextual. *Coghlan*, 413 F.3d at 1094-95. And her circumstantial evidence is not "specific and substantial." *Id*. She

alleges a general gender disparity in job assignments and pay, but she primarily cites her own testimony and offers no evidence this was a pattern relevant to her program or her own non-renewal. (Doc. 40 at 8 (citing own testimony and a trends report of unclear origin).) She does cite a 2019 report which suggests pay gaps existed at NAU, but that report does not factor in variables like academic disciplines and does not appear relevant to hiring or firing decisions in any specific department. (Doc. 40-3 at 228.) Similarly, that three of the four non-renewals were women does not supply specific and substantial evidence of gender discrimination. *Id*. at 1100 (sample size of three carries little or no weight in showing discrimination). Brown does cite certain past decisions like Rackham's hiring which she views as sexist (Doc. 40 at 2), but again does not provide evidence beyond her own testimony suggesting sex played a role in that decision or others.

Brown additionally points to ABOR's allegedly "changing explanations" for her non-renewal. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008) (inconsistent explanations for employment decisions can show pretext). She argues her backfill position was previously discussed as a factor (Doc. 40-3 at 4) and ABOR now cites the oversaturation of broadcast journalists in the program (Doc. 40 at 7, 11-13). But multiple explanations were consistently offered as factors for the non-renewal; throughout, NAU cited the COVID pandemic, Brown's position as a backfill, and the program's enrollment and instructional needs (*see* Doc. 43-3 at 4). Brown has not shown these multiple explanations were shifting or conflict with each other. *Id*. (declining to infer pretext from employer's multiple but consistent reasons for layoff). Ultimately, Brown's primary argument for pretext is that her own qualifications were superior to Harpster's and Faust's such that sex-based bias must be the reason for her non-renewal. (Docs. 40-2 at 15-17 (Brown compares her experience and education favorably to Harpster's and Faust's), 19 (Brown believes she was qualified to teach broader variety of courses and provide more experiential learning than Harpster or Faust); 40 at 13 (in briefing, characterizing Harpster's and Faust's professional experiences in print journalism as "limited to . . . a dying field")).) This is unconvincing: "subjective personal judgments of her competence

alone do not raise a genuine issue of material fact" as to ABOR's non-discriminatory rationale. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996).

There is no evidence any bias existed so as to make discrimination "more likely" than not even under ordinary standards for showing pretext. *Coghlan*, 413 F.3d at 1094-95. But here, Brown's bar is significantly higher because the same actor—Pugliesi—advocated for Brown's promotion in 2020 (Doc. 34-3 at 43) before selecting her for non-renewal a few months later (Doc. 34 at 16).

Where the same actor responsible for the adverse employment action was shortly beforehand responsible for a positive employment action, the court infers there was no discrimination. *Coghlan*, 413 F.3d at 1096; *see also Bradley*, 104 F.3d at 270-71 (establishing "same-actor inference"). This is a "strong inference that a court must take into account on a summary judgment motion." *Id*. at 1098 (simplified). A plaintiff may overcome it with an "extraordinarily strong showing of discrimination." *Blair*, 685 F. App'x at 588. ABOR argues it is entitled to the same-actor inference because Pugliesi hired Brown[5] and advocated for Brown's promotion five months before selecting her for non-renewal. (Doc. 34 at 16.) The parties do not contest Pugliesi was the primary decision-maker in Brown's non-renewal. (Docs. 34 at 9; 40 at 7.) Brown instead argues that because Pugliesi was not "the ultimate decision-maker" for the promotion and the promotion was not implemented before Brown's non-renewal, the same-actor inference cannot apply. (Doc. 40 at 15.)

Pugliesi advocated for Brown's promotion and officially wrote a recommendation for her, though additional direct decision-makers were also involved. (Doc. 34-3; *see* Doc. 40-2 at 12 (faculty committee recommended Brown, followed by Short, another committee, Pugliesi, provost, and finally NAU president)).) And recommendations constitute positive employment actions even if the actor is not the ultimate decision-maker

---

[5] Though Brown does not substantially argue this point, Pugliesi's role in Brown's hiring would not support the inference because there is no evidence she personally contributed to the hiring decision, only that her name was on Brown's offer letter. (Doc. 34-2 at 77; *see* Doc. 34 at 4 (then-SOC Director Medoff explaining to Brown his decision to select Rackham as MIC Director).)

for (or even involved in) the decision. *See Crudder v. Peoria Unified Sch. Dist. No. 11*, No. 2:09-CV-0435-HRH, 2010 WL 11523855, at \*5 (D. Ariz. Dec. 21, 2010), *aff'd*, 468 F. App'x 781 (9th Cir. 2012) (applying inference where actor recommended plaintiff to a board); *Bois v. Levi Strauss & Co.*, No. 23-CV-02772-TLT, 2024 WL 4004980, at \*11 (N.D. Cal. July 30, 2024) (applying inference where actor "was leading the effort to promote [plaintiff]"); *cf. Curry v. Contra Costa Cnty.*, No. 12-CV-03940-WHO, 2014 WL 1724431, at \*11 (N.D. Cal. Apr. 30, 2014) (no inference where actor "was not the decision-maker" and the 'positive' action could "easily" have been construed negatively). Whether the promotion took effect is also immaterial; a prior positive action is relevant as proof of the actor's lack of bias, not because of the action's practical effect. *Bradley*, 104 F.3d at 270-71; *see Crudder*, 2010 WL 11523855, at \*5 (applying inference where recommendation for promotion was rescinded before promotion took effect). The inference therefore applies, requiring extraordinarily strong proof of discrimination to show pretext. *Id*. at 270.

Brown does not present enough evidence to rebut ABOR's explanation under the normal standard, let alone when the same-actor inference applies. The motion for summary judgment is granted.

## IV.    Conclusion

Brown made a prima facie case of discrimination but did not provide sufficient evidence to overcome ABOR's nondiscriminatory rationale for her non-renewal, particularly given the applicability of the same-actor inference. ABOR's motion for summary judgment is granted.

/

/

/

/

/

/

Accordingly,

**IT IS ORDERED** ABOR's Motion for Summary Judgment (Doc. 34) is **GRANTED**. The Clerk of Court shall enter judgment in favor of defendant and close this case.

Dated this 26th day of February, 2026.

Honorable Krissa M. Lanham
United States District Judge